**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ERIKA VERGARA<br><br>Plaintiff,<br><br>v.<br><br>THOMAS KEYES, NEW JERSEY STATE POLICE, STATE OF NEW JERSEY, JOHN DOES (1-10) (Fictitious Individuals); ABC CORPORATIONS (A-Z) (Fictitious Corporations)<br><br>Defendant(s). | Civil Action<br><br>Case No.:<br>_____<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL; DESIGNATION OF TRIAL COUNSEL; PLAINTIFF'S DEMAND FOR DAMAGES |

By way of Complaint through the undersigned attorneys, Plaintiff Erika Vergara hereby states the following:

<u>PARTIES</u>

1. Plaintiff Erika Vergara (hereinafter referred to as "Plaintiff Vergara") resides in Bayonne, New Jersey and at all times relevant was an employee at Jersey City Police Department.

2. Plaintiff Vergara is currently 44 years old.

3. Plaintiff Vergara resides in Bayonne, New Jersey.

4. Defendant Thomas Keyes (hereinafter referred to as "Defendant Keyes") was at all times relevant hereto an employee of

1

Defendant New Jersey State Police, specifically the New Jersey State Police Central Laboratory located in Hamilton, New Jersey.

5.    Defendant State of New Jersey, created and continues to maintain the New Jersey State Police by law under N.J.S.A. 53:1-1 et seq.

6.    At all times relevant hereto, the Defendant, New Jersey State Police is located on River Road in West Trenton, New Jersey 08628.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction of Plaintiff's Federal Law claims pursuant to 28 U.S.C. §1331, as this case involves questions of Federal Law.

8.    This action stems from violations of Section 1983 which includes the violations by the New Jersey State Police and other named government employees acting within the scope of their employment as Defendants, conferring exclusive jurisdiction upon the United States District Court pursuant to 28 U.S.C. §1331.

9.    This Court has supplemental jurisdiction over the related State Law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's State Law claims share all common operative facts with her Federal Law claims, and the parties are identical. Resolving Plaintiff's Federal and State claims in a single action serves the interests of judicial

economy, convenience, consistency, and fairness to the parties.

10. All parties (including the Defendants) are domiciled and/or conduct substantial operations/business in the State of New Jersey. Moreover, the subject incident which gave rise to the violations occurred in the State of New Jersey, rendering the District of New Jersey an appropriate venue pursuant to 28 U.S.C. §1391.

11. Venue is proper in and Defendants are subject to the personal jurisdiction of this Court because Defendants maintain facilities and business operations in this District 28 U.S.C. §1391(b); 42 U.S.C. § 2000e-5(f)(3).

12. Pursuant to 28 U.S.C. §2675 and N.J.S.A. 59:8-9, Plaintiff Vergara simultaneously served a Notice of Claim upon Defendants New Jersey State Police and Thomas Keyes.

## NEW LAW

13. The legislation listed as S477 "Extends Statute of Limitations in Civil Actions for Sexual Abuse Claims; Expands Categories of Potential Defendants in Civil Actions; Creates Two-Year Window for Parties to Bring Previously Time-Barred Actions Based on Sexual Abuse" was enacted on May 13, 2019, becoming ratified as P.L.2019, c120. and effective as of December 1, 2019.

14. As the legislation pertains to this matter specifically, when effective, P.L.2019, c120 amends multiple statutes as related to sexual assault, sexual abuse, and any other crimes of a sexual

3

nature. Significantly, P.L.2019, c120 alters N.J.S.A 2A:14-2 by
creating an additional section which reads:

> b. (1) Every action at law for an injury resulting
> from the commission of sexual assault or any other
> crime of a sexual nature against a person 18 years of
> age or older that occurred prior to, on or after
> December 1st, 2019 shall be commenced within seven
> years from the date of reasonable discovery of the
> injury and its causal relationship to the act. (2) To
> the extent applicable, any action for an injury that
> occurred prior to the effective date of P.L.2019,
> c.120 shall be subject to the provisions of subsection
> c. of section 1 of P.L.1959, c.90 (C.2A:53A-7), as
> amended by P.L.2019, c.120.

> Subsection c. of section 1 of P.L. 1959, c90 (C.
> 2A:53A-7) has been amended by P.L.2019, c120 to read
> as follows:

> Nothing in this section shall be deemed to
> grant immunity to: (1) any nonprofit corporation,
> society or association organized exclusively for
> religious, charitable, educational or hospital
> purposes, or its trustee, director, officer, employee,
> agent, servant or volunteer, causing damage by a
> willful, wanton or grossly negligent act of commission
> or omission, including sexual assault and, any other
> crime of a sexual nature, a prohibited sexual
> act as defined in section 2 of P.L.1992, c.7
> (C.2A:30B-2), or sexual abuse as defined in section
> 1 of P.L.1992, c.109 (C.2A:61B-1)

15.    In short, when effective, P.L.2019, c120 retroactively
expands the Statute of Limitations from two (2) years to
seven (7) years. P.L.2019, c120 makes charitable
organizations liable for the negligent or willful, wanton,
or grossly negligent conduct of trustees, officers, agents,
employees, volunteers, and servants. P.L.2019, c120 makes

inapplicable the Title 59 Notice Provisions of the Tort Claims Act as it relates to sexual abuse litigation. P.L.2019, c120 has removed all governmental immunities as against claims arising from sexual abuse. The legislature has also even made clear that public organizations are to be sued in the same capacity as private entities. The implications that these changes make to this case are substantial.

16.     Any attempt by Defendants to file a Motion to Dismiss will rely on claims that Plaintiff's Counts are time barred by the Statute of Limitations, protections and preclusions afforded under the New Jersey Tort Claims Act, and protections afforded under the Charitable Immunities Act. The changes in the law render these defenses moot. Absent said defenses, Any of Defendants' Motions to Dismiss relies will rely upon fact sensitive contentions which are improperly brought under a Motion to Dismiss.

### STATEMENT OF FACTS

17.  Plaintiff Vergara has nearly twenty (20) years of experience in law enforcement.

18.  Plaintiff Vergara's career began in 2000, as a Crime Analyst for the Jersey City Police Department.

5

19. In 2003, Plaintiff Vergara moved to the position of Customs Inspector for United States Customs and Border Patrol.

20. After leaving that position, Plaintiff Vergara was hired by Defendant Jersey City Police Department on January 7, 2005, as a Police Officer.

21. Plaintiff Vergara was transferred to the Property Room in late October of 2013.

22. As a former Crime Analyst, Plaintiff Vergara was a natural selection for the Property Room, because it involved the handling and cataloging of evidence.

23. When Plaintiff Vergara was transferred to the Property Room, she was assigned the task of DNA and DUI evidence delivery.

24. Plaintiff Vergara hand delivered/transferred DNA evidence to the New Jersey State Police (NJSP) Central Laboratory located in Hamilton, New Jersey.

25. While it is possible for others to deliver the DNA and DUI evidence, because Plaintiff Vergara is the evidence cataloger, allowing any other person to deliver the evidence complicates the chain of custody.

26. There are always two Police Officers that go together to deliver evidence to the laboratory.

27. When delivering the evidence, Plaintiff Vergara went to DNA and her partner P.O. Dignora Aquino went to Ballistics.

6

28.   Once Plaintiff Vergara completed her DNA delivery, via NJSP intake, she would go and meet with her partner who delivers/transfers Ballistics and Handguns to the Ballistics Unit (NJSP Central laboratory).

29.   While at the NJSP Laboratory, Defendant Thomas Keyes, a retired Captain in charge of Ballistic DNA, befriended Plaintiff's partner P.O. Aquino.

30.   Although Defendant Keyes is retired, he is still addressed by his title and wears New Jersey State Police gear while working.

31.   As a result, Plaintiff Vergara and P.O. Aquino had conversations with Defendant Keyes.

32.   Defendant Keyes on several occasions would make comments to P.O. Aquino referring to her as "Nikki Minaj". This was in reference to P.O. Aquino having a large buttocks. Plaintiff Vergara interpreted this to be a derogatory way to refer to a fellow officer. Every time Defendant Keyes would refer to Officer Aquino in this manner, Plaintiff Vergara and Officer Aquino would ignore him.

33.   During July 2017, while Plaintiff Vergara was in full uniform performing her duties of delivering evidence to the New Jersey State Police Central Laboratory, Defendant Keyes assaulted and sexually battered Plaintiff Vergara.

34.  During the course of a conversation, in the parking lot of the
     NJSP Laboratory, Defendant Keyes forcefully slapped Plaintiff
     Vergara's buttocks.

35.  When Defendant Keyes slapped Plaintiff Vergara's buttocks, she
     was in full uniform, standing in the parking lot outside the
     NJSP laboratory, speaking with Defendant Keyes and P.O Aquino.

36.  P.O Aquino witnessed Defendant Keyes commit sexual battery
     against Plaintiff Vergara.

37.  After this incident occurred, Plaintiff Vergara and P.O. Aquino
     had no idea how to react, as a superior officer had just
     committed a sexual battery against a subordinate. Both were in
     shock.

38.  On July 25, 2017, Plaintiff Vergara received a text message from
     an unknown number.

39.  The text message read "Wassup Man-al-a-pan?"

40.  The text message had come from Defendant Keyes, who had heckled
     Plaintiff Vergara earlier that day over her pronunciation of
     Manalapan.

41.  Plaintiff Vergara did not give Defendant Keyes her phone number.

42.  Defendant Keyes obtained her number by looking at Plaintiff
     Vergara's phone when he had asked to see a news video she was
     watching.

43.  When Plaintiff Vergara responded to Defendant Keyes text
     message, several hours later, Defendant Keyes wrote "Damn, I

8

don't have 'Booty Calls' get back 2 me that quick, I like that…."

44.   Defendant Keyes sent more sexually aggressive text messages over the following weeks:

- On August 2, 2017, Defendant Keyes messaged "Sucks & not a good suck either. Raining there?" Plaintiff Vergara never responded.

- On August 4, 2017, Defendant Keyes messaged "How's it going, am I going 2 C U on Telemundo acting on as soap opera w/ azz & boobies out?". Plaintiff Vergara never responded.

- On August 15, 2017, Defendant Keyes messaged "Alright baby, have a good trip, by the time I see U again summer will Be over. Don't lose 2 much weight now, I gotta have something 2 hold onto". Plaintiff Vergara never responded.

- On August 15, 2017, Defendant Keyes messaged "Don't lose 2 much, U gotta have a little "backyard" 2 play in". Plaintiff Vergara responded "Where do you get these sayings from?" Defendant Keyes responded "In ur case I just look at what 'ur working with'." Plaintiff Vergara never responded.

45.   Defendant Keyes again sexually battered Plaintiff Vergara in early October 2017.

46.   While Plaintiff Vergara was standing against a cubicle, in full uniform, speaking to Detective Tietjen, Defendant Keyes

approached Plaintiff Vergara from behind and again slapped her
buttocks.

47. The above incident occurred inside the Ballistics Unit at the
NJSP central Laboratory.

48. Following this incident, Plaintiff Vergara began avoiding
Defendant Keyes as much as possible while still performing the
duties of her position.

49. On October 10, 2017, Defendant Keyes sent five (5) text messages
in the span of 20 minutes, seeking to have personal interaction
with Plaintiff Vergara. Plaintiff Vergara intentionally didn't
respond to the messages until after she had left the building.

50. On October 17, 2017, Defendant Keyes sent another text message
to Plaintiff Vergara about seeing her at the lab. Plaintiff
Vergara again did not respond until after she had left the
building.

51. October 24, 2017, Defendant Keyes again text messaged Plaintiff
Vergara about seeing her at the lab. Plaintiff Vergara again did
not respond until after she had left the building.

52. In late November 2017, Defendant Keyes messaged "Happy
Thanksgiving" and Plaintiff Vergara replied "Happy
Thanksgiving."

53. On December 19 2017, Defendant Keyes messaged "Hey U & Isaac
have a Merry Christmas. C U in a couple weeks. Oh, U getting a
little more back there I C." In an effort to remain

10

professional, Plaintiff Vergara messaged "Thank you you as well. I'll be back to work January 2."

54. Defendant Keyes committed a third sexual battery against Plaintiff Vergara on February 20, 2018.

55. Plaintiff Vergara was speaking with Lauren Perdue, to whom Plaintiff Vergara had previously expressed concerns relating to Defendant Keyes.

56. As Plaintiff Vergara was speaking with Lauren Perdue, and handing in DNA evidence, Defendant Keyes started walking towards Plaintiff Vergara, who had her back to him.

57. Defendant Keyes approached Plaintiff Vergara from behind and pinched and slapped Plaintiff Vergara's buttocks while she was at the DNA intake counter at the NJSP Central Laboratory in Hamilton, New Jersey.

58. This sexual battery was witnessed by Lauren Perdue.

59. After this incident, Lauren Perdue described Defendant Keyes as having his tongue out, excitedly looking Plaintiff Vergara up and down as he approached, like a dog salivating after a bone.

60. When Perdue witnessed these events, she stated "He's disgusting, don't go back there. Stay here."

61. As a result, Plaintiff Vergara did not go back to the Ballistics Unit on February 20, 2018, as she had always done to meet her partner. Plaintiff Vergara instead stood in the waiting room located at the entrance of the Central Laboratory building.

11

62.    Defendant Keyes then approached Plaintiff Vergara and tried to speak to her as if nothing had occurred.

63.    Upon information, knowledge and belief, the February 20, 2018, incident occurred in view of video cameras in the lab.

64.    After the last incident Plaintiff Vergara knew that Defendant Keyes wasn't going to stop as the incidents kept getting worse and more brazen.

65.    Following this last occurrence on February 20, 2018, Plaintiff attempted to put an end to the sexually inappropriate text messages and unwanted sexual contact.

66.    At 7:04 p.m. on February 20, 2018, Plaintiff Vergara messaged Defendant Keyes the following "Hey its Erika Vergara from JCPD. I just want to address an issue I'm having so we don't have a serious misunderstanding. I feel very uncomfortable when you smack or pinch my butt while I'm conducting business in the lab. This is the 3rd time it's happened and it makes me extremely uncomfortable.   My aim is to keep a strictly professional relationship with all of my law enforcement counterparts I interact with on a daily basis.   Please don't let that occur again, and please keep it professional with me when I visit the lab.   Thank you."

67.    Defendant Keyes response was as follows: "Understood all of our interactions will be on a professional basis from now on." Sent to Plaintiff Vergara on February 20, 2018, at 8:48 p.m.

68.  During all of the above incidents, Defendant Keyes was wearing a
     NJSP Laboratory badge, denoting his status as an employee of the
     Laboratory.

69.  During all these encounters Plaintiff Vergara was dressed in her
     uniform which is a blue tee-shirt embroidered with the Jersey
     City Police Department Emblem (Patch), blue cargo pants, belt
     and handgun. There is no way to mistake Plaintiff Vergara as a
     civilian in this uniform.

70.  On Wednesday, February 21, 2018, Plaintiff Vergara called P.O.
     Dignora Aquino to inform her of what Defendant Keyes did to
     Plaintiff Vergara on February 20, 2018.    Plaintiff Vergara
     informed P.O. Aquino that she no longer wanted to go to the NJSP
     Central Laboratory because Plaintiff Vergara was in fear that
     Defendant Keyes would sexually assault her again.

71.  Plaintiff Vergara then verbally notified her immediate
     supervisor, Lieutenant Iris Cruz, who had also overheard some of
     the conversation with P.O. Aquino.  Lt. Cruz, in turn, notified
     the Building Commander Captain Jay White, via written
     documentation, on Thursday, February 22, 2018.

72.  Defendant Keyes was relieved of his post soon thereafter.

73.  Plaintiff Vergara gave a statement and an incident report was
     filed against Thomas Keyes on Monday, March 5, 2018, at New
     Jersey State Police, Troop C Headquarters, 1400 Negron Drive,
     Hamilton, New Jersey 08691.   On July 18, 2019, and again on

August 2, 2019, Plaintiff Vergara requested a copy of the Police Report via email. To date, Plaintiff Vergara is still awaiting a copy of the Police Report.

74. In late May, 2019, Plaintiff Vergara began to seek a mental health treatment to assist her in dealing with the hurt and pain these incidents have caused to Plaintiff Vergara. Plaintiff Vergara continues to see a professional counselor on a weekly basis. Plaintiff Vergara has also been seeing a psychiatrist once or twice a month since September 2019.

75. On July 18, 2019, at 10:30 a.m. Plaintiff Vergara met with Lt. Wilson Rosa of the EEO Intake & Training Unit at the Jersey City Public Library located on Jersey Avenue in Jersey City. On this date Plaintiff Vergara gave a statement of the three incidents that occurred with Defendant Keyes touching Plaintiff Vergara inappropriately.

## COUNT I

### 1983 VIOLATION AS TO DEFENDANT THOMAS KEYES
### (42 U.S.C. § 1983)

76. Plaintiff Vergara repeats and reiterates all of the allegations contained in the above Statement of Facts and/or paragraphs as if set forth at length herein.

77. Under the Fourteenth Amendment, Plaintiff Vergara had the right to personal security and bodily integrity and Equal Protection of Laws.

78. Defendant Thomas Keyes was a state actor acting under the color of State Law.

79. Defendant Keyes subjected Plaintiff Vergara to violations of her right to personal security and bodily integrity and Equal Protection of Laws by committing sexual harassment and assault against Plaintiff Vergara, while clothed in the authority of his position.

80. Plaintiff Vergara has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant New Jersey State Police's deliberate indifference to her rights under the Fourteenth Amendment.

**WHEREFORE**, Plaintiff hereby demands Judgment against Defendants for Compensatory and Punitive Damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

## COUNT II

**LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE, EMPLOYEES (as to Defendants, New Jersey State Police and State of New Jersey) (42 U.S.C. § 1983)**

81.  Plaintiff Vergara repeats and reiterates all of the allegations contained in the above Counts and/or paragraphs as if set forth at length herein.

82.  Under the Fourteenth Amendment, Plaintiff Vergara had the right to personal security and bodily integrity and Equal Protection of Laws.

83.  Defendants, New Jersey State Police and State of New Jersey, their agents, supervisors, and employees were "state actors" working in the NJSP Central laboratory for Defendants, New Jersey State Police and State of New Jersey.

84.  Defendants, New Jersey State Police and State of New Jersey, their agents, supervisors, and employees acted under "color of law" when failing to properly train and supervise Defendant Keyes.

85.  Had there been proper training and supervision of Defendant Keyes, Plaintiff Vergara would not have been sexually harassed and/or assaulted.

86.  Defendants, New Jersey State Police and State of New Jersey, their agents, supervisors, and employees failed to preserve

16

Plaintiff Vergara's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

87.   Defendants, New Jersey State Police and State of New Jersey, their agents, supervisors, and employees should have known that their response to sexual harassment allegations must comply with federal law.

88.   Defendants, New Jersey State Police and State of New Jersey, their agents, supervisors, and employees violated Plaintiff Vergara's Fourteenth Amendment right to equal protection by failing to properly train and supervise its employees as to these mandated investigative requirements.

89.   Defendants' actions and lack of actions were the proximate cause of Plaintiff Vergara's emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a result of Defendants, New Jersey State Police and State of New Jersey's deliberate indifference to her right to equal protection under the Fourteenth Amendment.

90.   Defendants each subjected Plaintiff Vergara to violations of her right to personal security and bodily integrity and Equal Protection of Laws by: (1) failing to adequately train and supervise New Jersey State Police employees; and (2) manifesting

17

deliberate indifference to the sexual assaults and ongoing sexual harassment of Plaintiff Vergara by Defendant Keyes.

91. Defendant New Jersey State Police, has and/or had unconstitutional customs or policies of a) failing to investigate evidence of criminal and tortious misconduct against individuals in the nature of violations of their right to personal security and bodily integrity and b) failing to adequately train and supervise employees with regard to maintaining, preserving and protecting individuals from violations of their rights to personal security, bodily integrity, and Equal Protection of the Laws.

92. Upon information and belief, Defendant New Jersey State Police, has followed these unconstitutional customs and policies not only with regard to Plaintiff Vergara but also with regard to criminal and tortious misconduct committed against other New Jersey State Police employees.

93. Defendant New Jersey State Police's policies and/or practices constituted disparate treatment of females and had a disparate impact on females, including Plaintiff Vergara.

94. Defendant New Jersey State Police knew that its policies and practices constituted disparate treatment of females.

18

95.   Defendant New Jersey State Police, by and through its employees, who were following Defendant New Jersey State Police's policies and practices, took action which was deliberately indifferent to the Plaintiff Vergara.

96.   Plaintiff Vergara has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant New Jersey State Police's deliberate indifference to her rights under the Fourteenth Amendment.

        **WHEREFORE**, Plaintiff hereby demands Judgment against Defendants for Compensatory and Punitive Damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

### POINT III

### GENDER-BASED DISCRIMINATION IN VIOLATION OF NEW JERSEY LAW AGAINST DISCRIMINATION N.J.S.A. § 10:5-12

97.   Plaintiff Vergara repeats and reiterates all of the allegations contained in the previous Counts and/or paragraphs as if set forth at length herein.

98.   Defendants discriminated against Plaintiff Vergara by treating her differently from her male co-workers, because of her gender.

99.  Plaintiff Vergara's gender was the determining factor and/or a motivating factor in Defendants' actions toward her.

100. As a direct, legal and proximate result of the discrimination, Plaintiff Vergara has sustained, and will continue to sustain, psychological damages to be proven at trial. As a result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

101. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff Vergara's right to be free from discrimination based on gender.

102. Plaintiff Vergara is entitled to reasonable attorneys' fees and costs of suit.

**WHEREFORE**, Plaintiff hereby demands Judgment against Defendants for Compensatory and Punitive Damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

## COUNT IV

### ASSAULT

103. Plaintiff Vergara repeats and reiterates all of the allegations contained in the previous Counts and/or paragraphs as if set forth at length herein.

104. At all times relevant, Defendant Keyes, was an employee of Defendants State of New Jersey State Police.

105. Defendant Keyes used his position of authority to gain access to Plaintiff Vergara, to sexually harass and assault Plaintiff Vergara.

106. In New Jersey a person is guilty of simple assault if they attempt to cause or purposely, knowingly, or recklessly cause bodily injury to another, negligently cause bodily injury to another by physical menace, or put another in fear of imminent serious bodily injury.

107. All Defendants acted with the purposeful, knowing, reckless, negligent intent to cause harm to Plaintiff Vergara and thereby put her in imminent apprehension and fear for her well-being.

108. All Defendants' actions would be offensive to a person with a reasonable sense of personal dignity.

109. Plaintiff Vergara did not consent to the acts and any purported consent was secured through fraud, deception, and undue influence, coercion and duress thereby rendering it void.

21

110. Defendants' actions were outrageous, and constituted a wanton and reckless disregard to Plaintiff Vergara's health and well-being.

111. As a direct and proximate result of the conduct described herein above, Plaintiff Vergara has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform occupational and recreational tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from anxiety and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff Vergara's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

112. The actions of the Defendants, as alleged herein shattered the natural human trust inherent in a person's interactions and relationships with others, thereby causing and contributing to psychological injuries to Plaintiff Vergara, necessitating the

22

need for psychological care and treatment, which will continue into the future, resulting in loss of earnings and loss of future earning capacity and was caused to sustain other great losses all contributing to her damages in dollar sum subject to proof at the time of trial.

113. All Defendants acted purposefully, intentionally, knowingly, carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to Plaintiff Vergara by allowing or perpetuating assault of Plaintiff Vergara.

**WHEREFORE**, Plaintiff hereby demands Judgment against Defendants for Compensatory and Punitive Damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

## COUNT V

### BATTERY
### (as to Defendant Keyes)

114. Plaintiff Vergara repeats and reiterates all of the allegations contained in the previous Counts and/or paragraphs as if set forth at length herein.

115. At all times relevant, Defendant Keyes was an employee of Defendants State of New Jersey and New Jersey State Police.

116. Defendant Keyes used his position of authority to gain access to Plaintiff Vergara to sexually harass and engage in unlawful contact with the Plaintiff Vergara without her consent.

23

117. Defendant Keyes did in fact cause actual harmful and offensive touching of Plaintiff Vergara, with the requisite intent.

118. Defendant Keyes's actions would be offensive to a person with a reasonable sense of personal dignity.

119. Plaintiff Vergara did not consent to the touching, which was against her will, and any failure to report the incidents was the result of overwhelming mental duress, undue influence and coercion.

120. Defendant Keyes's actions were outrageous, and constituted a wanton and reckless disregard to Plaintiff Vergara's health and well-being.

121. As a direct and proximate result of the conduct described herein above, Plaintiff Vergara has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff Vergara's self-esteem and ability to

trust others has been substantially impaired, needing to obtain
help and treatment from professionals and health care
professionals in general and may incur medical, hospital and
psychiatric expenses in amounts yet to be determined.

**WHEREFORE**, Plaintiff Vergara hereby demands Judgment
against Defendants for Compensatory and Punitive Damages,
interest, costs of suit, attorneys' fees and such other relief
as the Court or Jury may deem proper.

**COUNT VI**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(as to all Defendants)**

122. Plaintiff Vergara repeats and reiterates all of the allegations
     contained in the previous Counts and/or paragraphs as if set
     forth at length herein.

123. At all times relevant, Defendant Keyes, was a supervisor of
     Defendants State of New Jersey and New Jersey State Police.

124. Defendant Keyes used his position of authority to gain access to
     Plaintiff Vergara, to sexually harass and engage in unlawful
     contact with the Plaintiff Vergara without her consent.

125. Defendant Keyes by duress, intimidation, and force engaged in
     contact with Plaintiff Vergara, which included the humiliating
     acts set forth in previous Counts of this Complaint, all for the
     sexual gratification of Defendant Keyes.

126. The sexual harassment and assault of Plaintiff Vergara by Defendants, proximately caused the Plaintiff Vergara to suffer extreme humiliation and anxiety, severe emotional distress and mental anguish and other physical and psychological injuries including repression of memory.

127. Defendants acted either intentionally or recklessly and knew or should have known that the inappropriate sexual touching and other misconduct in their relationships with Plaintiff Vergara would result in serious emotional distress to Plaintiff Vergara beyond what a normal person could be expected to endure.

128. The misconduct of Defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

129. As a direct and proximate result of the conduct described herein above, Plaintiff Vergara has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will

continue to endure interference with engaging in her full normal daily activities. Plaintiff Vergara's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff Vergara hereby demands Judgment against Defendants for Compensatory and Punitive Damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

**COUNT VII**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(as to all Defendants)**

130. Plaintiff Vergara repeats and reiterates all of the allegations contained in the previous Counts and/or paragraphs as if set forth at length herein.

131. At all times relevant, Defendant Keyes, was employed by Defendants State of New Jersey and New Jersey State Police.

132. Defendant Keyes used his position of authority to gain access to Plaintiff Vergara, to sexually harass and engage in unlawful contact with the Plaintiff Vergara without her consent.

133. Defendant Keyes by duress, intimidation, and force caused Plaintiff Vergara to engage in contact with him, which included

the humiliating acts set forth in previous Counts of this Complaint, all for the sexual gratification of Defendant Keyes.

134. The sexual harassment and assault of Plaintiff Vergara by Defendants, proximately caused the Plaintiff Vergara to suffer extreme humiliation and anxiety, severe emotional distress and mental anguish and other physical and psychological injuries including repression of memory.

135. Defendants acted carelessly, negligently, or recklessly and knew or should have known that the inappropriate sexual touching, sexual assault, and other misconduct in their relationships with Plaintiff Vergara would result in serious emotional distress to Plaintiff Vergara beyond what a normal person could be expected to endure.

136. The sexual misconduct of Defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

137. As a direct and proximate result of the conduct described herein above, Plaintiff Vergara has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities;

28

will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff Vergara's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

**WHEREFORE**, Plaintiff Vergara hereby demands Judgment against Defendants for Compensatory and Punitive Damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

### COUNT VIII

**NEGLIGENT HIRING, SUPERVISION, AND RETENTION**
**(as to Defendants New Jersey State Police and State of New**
**Jersey and John Does 1-10 (Fictitious Individuals))**

138. Plaintiff Vergara repeats and reiterates all of the allegations contained in the previous Counts and/or paragraphs as if set forth at length herein.

139. Defendant Keyes, was hired to work for Defendants, State of New Jersey and New Jersey State Police.

29

140. At all times relevant, Defendant Keyes was an employee of Defendants State of New Jersey and New Jersey State Police.

141. Defendant Keyes used his position of authority to gain access to Plaintiff Vergara, to sexually harass and engage in unlawful contact with the Plaintiff Vergara without her consent.

142. Defendants, State of New Jersey and New Jersey State Police as employers, at the time of hiring employee, Defendant Keyes, had reason to believe, or could have determined by reasonable investigation, that the employee was dangerous and/or ill-equipped to handle and perform his duties and hired him anyway, which proximately caused injury to Plaintiff Vergara.

143. Defendants, State of New Jersey and New Jersey State Police as employers knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee, Defendant Keyes.

144. Defendants, State of New Jersey and New Jersey State Police as employers could have reasonably foreseen that hiring a person with the attributes of the employee, Defendant Keyes, created a risk of harm to others, whether on or off the premises.

145. Defendant Keyes showed a risk of harm that was foreseeable and carelessly, negligently, and recklessly disregarded.

146. Defendants, State of New Jersey and New Jersey State Police, acted carelessly, recklessly, negligently, and grossly

negligent, and caused or allowed to be caused great harm to
Plaintiff Vergara by hiring the Defendant Keyes

147. As a direct and proximate result of the conduct described herein
above, Plaintiff Vergara has and will continue to suffer
physical injury; severe emotional distress and anguish;
diminished enjoyment of life; difficulty and an inability to
focus; difficulty and an inability to perform work-related
tasks; anxiety; depression; humiliation; pain in mind and body;
severe embarrassment; is having and has had difficulty living a
normal life; has not and will not engage in normal activities;
will suffer from behavior patterns and will continue to do so in
the future; will in the future be caused to endure severe pain
in mind and body; has endured interference with and will
continue to endure interference with engaging in her full normal
daily activities. Plaintiff Vergara's self-esteem and ability to
trust others has been substantially impaired, needing to obtain
help and treatment from professionals and health care
professionals in general and may incur medical, hospital and
psychiatric expenses in amounts yet to be determined.

148. Defendant Keyes was hired to work for Defendants State of New
Jersey and New Jersey State Police.

149. At all times relevant, Defendant Keyes was an employee of
Defendants State of New Jersey and New Jersey State Police.

150. Defendant Keyes used his position of authority to gain access to Plaintiff Vergara, to sexually harass and engage in unlawful contact with the Plaintiff Vergara without her consent.

151. By hiring Defendant Keyes the Defendants, State of New Jersey and New Jersey State Police accepted the responsibility of supervising the employee.

152. Defendants, State of New Jersey and New Jersey State Police the employees, managers, training staff, and/or supervisors failed to properly monitor the Defendant Keyes. Based on external factors and the entirety of the circumstances, a reasonable person would expect a higher level of supervision.

153. Plaintiff Vergara sustained injuries, which was a direct result of the failure to supervise, and the apparent authority Defendants, State of New Jersey and New Jersey State Police granted Defendant Keyes.

154. Defendants, State of New Jersey and New Jersey State Police failed to maintain and implement a practical sexual abuse/harassment policy, which is evidenced by the failures of anyone to take requisite steps to investigate and/or reprimand Defendant Keyes, until he grew bold enough to openly assault Plaintiff Vergara in front of the front desk.

155. If there was proper supervision, Plaintiff Vergara would not have been sexually harassed and assaulted by Defendant Keyes. Rather, Defendant Keyes was granted unfettered access to plan

and commit a premeditated scheme to sexually harass and assault Plaintiff Vergara.

156. Had there been proper supervision, the incidents would have been discovered immediately by Defendants, State of New Jersey and New Jersey State Police.

157. As a direct and proximate result of the conduct described herein above, Plaintiff Vergara has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff Vergara's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

158. Defendant Keyes was hired to work for Defendants State of New Jersey and New Jersey State Police.

159. At all times relevant, Defendant Keyes was an employee of Defendants, State of New Jersey and New Jersey State Police.

160. Defendant Keyes used his position of authority to gain access to Plaintiff Vergara, to sexually harass and engage in unlawful contact with the Plaintiff Vergara without her consent.

161. Defendants, State of New Jersey and New Jersey State Police learned of Defendant Keyes's dangerous propensities.

162. Defendants, State of New Jersey and New Jersey State Police negligently retained Defendant Keyes after learning of his dangerous propensities after he was hired.

163. Defendants, State of New Jersey and New Jersey State Police, did not take appropriate action to prevent harm to others, such as Plaintiff Vergara.

164. Defendants, State of New Jersey and New Jersey State Police facilitated Defendant Keyes's predatory behavior.

165. As a direct and proximate result of the conduct described herein above, Plaintiff Vergara has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in

the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff Vergara's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

**WHEREFORE**, Plaintiff Vergara hereby demands Judgment against Defendants for Compensatory and Punitive Damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

**COUNT IX**

**FICTITIOUS PARTIES**

166. Plaintiff Vergara repeats and reiterates all of the allegations contained in the previous Counts and/or paragraphs as if set forth at length herein.

167. John Does 1-10 (Fictitious Individuals) and ABC CORPORATIONS A-Z (Fictitious Corporations) are fictitious names for persons or entities which have not yet been identified but whose identities will be supplemented when ascertained by the Plaintiff Vergara.

168. Said Defendants may have played a role in the harm suffered by Plaintiff Vergara.

169. Plaintiff Vergara hereby reserves her right to amend the Complaint as a result of pleading such fictitious parties.

170. Defendants, John Does 1-10(Fictitious Individuals) and ABC CORPORATIONS A-Z (Fictitious Corporations) are individuals and/or corporations who may have taken action or inaction that resulted in harm against the Plaintiff Vergara but as are yet unknown or not yet necessarily germane to the allegations alleged in the Complaint.

171. As a direct and proximate result of the conduct described herein above, Plaintiff Vergara has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in his full normal daily activities. Plaintiff Vergara's self-esteem and ability to trust others has been substantially impaired, needing to obtain

36

help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

**WHEREFORE**, Plaintiff Vergara hereby demands Judgment against all Defendants for Compensatory and Punitive Damages, interest, costs of suit, attorneys' fees and such other relief as the court or jury may deem proper.

### JURY DEMAND

Plaintiff hereby demands a Trial by a Jury on all of the issues contained herein.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

### DESIGNATION OF TRIAL COUNSEL

ROBERT R. FUGGI, JR., ESQ., is hereby designated as Trial counsel in this matter.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

### DEMAND FOR DAMAGES

Plaintiff hereby demands damages from Defendants in an amount to be determined at the time of Trial.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

37

## CERTIFICATION

Pursuant to Local Rule 11.2, it is hereby certified that the matter in controversy is not the subject of any other action pending in any Court or Arbitration proceeding and Plaintiff does not contemplate any other action or Arbitration proceeding.

I certify that the foregoing statements made by me are true and correct to the best of my knowledge and information.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.